## UNITED STATES v. KRAFT PHENIX CHEESE CORPORATION.

District Court, S. D. New York.

March 12, 1936.

LaMar Hardy, U. S. Atty., and Joseph W. Burns, Asst. U. S. Atty., both of New York City.

Nicholson, Snyder, Chadwell & Fagerburg, of Chicago, Ill., and Robert S. Gordon, of New York City, for defendant.

THOMAS, District Judge.

The information filed against the defendant contains two counts charging violation of title 21, U.S.C. §§ 9 and 10 (21 U.S.C.A. §§ 9, 10), in that the defendant misbranded certain cheese shipped by it in interstate commerce, by labeling the same with a weight more than its true weight. The Government has rested; and the defendant now moves for a directed verdict.

I deem it prima facie established that the defendant did in fact ship the cheese in question in interstate commerce, and that the weights shown on the labels were in fact

more than the true weights existing at the time when the cheese was in the possession of the consignee. Nor can there be any question that if this constitutes sufficient evidence of "misbranding," then that the defendant is now amenable to the penalties of the law.

An article is to be deemed misbranded in the case of food: "If in package form, the quantity of the contents be not plainly and conspicuously marked on the outside of the package in terms of weight, measure, or numerical count: Provided, however, that reasonable variations shall be permitted, and tolerances and also exemptions as to small packages shall be established by rules and regulations made in accordance with the provisions of section 3 of this Act [title]." Title 21 U.S.C. § 10 (21 U.S.C.A. § 10).

The cheese in question was sold in packages marked "½ lb. net weight"; and out of sixty packages, selected at random and weighed, fifty-nine were underweight, one was overweight, and the average deficiency was about one-quarter of an ounce.

The respective contentions of the parties may be summarized as follows: The Government claims that it has established its case when it shows any scintilla of deficiency in the weight expressed on the label; though on a literal reading of the text it would appear that if the defendant understated the weight of its cheese, it would be just as liable to prosecution as if it overstated the same. The defendant contends that the proviso incorporated in the act places the burden of negativing its existence on the Government; and that in the instant case it is incumbent on the Government to show that the variations were unreasonable, and that the tolerances proven were not within the degrees permitted by the regulations of the departments controlling the enforcement of the act.

The Government replies that the proviso in question merely vested in these departments a discretion as to when they would or would not prosecute the violations of the act, and that when prosecution is determined upon, then the question of tolerances and variations is ipso facto removed from the consideration of the cause.

On this view of the matter, reference to fundamentals becomes necessary. If the defendant committed any offense at all, it committed it the moment the misbranded cheese crossed a state line. We may dismiss the notion that the act was innocuous, but became criminal as and when the Government chose to stamp it as such. Aside from the ex post facto character of such a determination, there is no room in our system of government for the exercise of any such power. The assertion, then, that any governmental department is vested with the power, in its discretion, to place or withhold the stamp of criminality upon an act after it has been committed, is wholly untenable. Either the law, by prevision, makes the act an offense, or nothing does. The law, it is true, may be such as is directly legislated by the Congress, or indirectly, by the system of supplementary rules promulgated under congressional authority by some govenmental department. But whether a rule of law be directly legislated or indirectly, it must be a *rule of law*, and not an individual fiat; and it must, if it be penal, command or inhibit in præsenti or in futuro. If this defendant committed a crime, it did it *before* the Government determined to prosecute. It must have done so, if it were to be liable to prosecution at all. So then we are at once confronted with the problem as to the bearing of the proviso.

It cannot be questioned that had the section been devoid of its proviso, then any deficiency in weight, however small, would have been criminal. We need not go to the extreme of holding that any *excess* would also have been criminal, even though no such distinction appears in the text. But the proviso is there, and the proviso is expressed categorically: "reasonable variations shall be permitted." Permitted by whom? By the departments, says the Government. By the jury, says the defendant. "Tolerances" are to be established by departmental rules and regulations; and presumably these tolerances are to determine the limits of reasonable variations; but whether so established or not, reasonable variations must be permitted.

As a matter of fact the Government has established its rules and regulations:

"(i) The following tolerances and variations from the quantity of the contents marked on the package shall be allowed:

"(1) Discrepancies due exclusively to errors in weighing, measuring, or counting which occur in packing conducted in compliance with good commercial practice.

"(2) * * *

"(3) Discrepancies in weight or measure due exclusively to differences in atmospheric conditions in various places and which unavoidably result from the ordi-

nary and customary exposure of the packages to evaporation or to the absorption of water."

Federal Food and Drugs Act (10th Rev.) Reg. 26.

It is perhaps to be noted that the departmental regulation puts no edge of precision on the language of the statute. It defines no limits in terms that are measurable; there is no known calculus by which it may be determined when in any given instance the tolerance has been exceeded. The Government says that all this is immaterial; even if mathematically computable tolerances had been established by rule, the Government would in no sense be bound, other than morally, by them. For such a perilous conclusion, no authority is cited.

I hold, then, that if the deficiency in the shipments in question did not exceed the reasonable variations or tolerances established by the Government, then no offense was committed within the purview of the act.

It is the further contention of the Government that the matter of the reasonableness of the variation is for the defense to establish, and that the Government makes out its case when it shows a discrepancy between the actual and the stated weight. On this question, also, no light is furnished by way of decisions. I can only say that on a close reading of the text, I am of the opinion that the proviso is imbedded in the prohibition; that is, that the offense is limited by the proviso. If this reading be correct, then the duty of the Government is to establish the existence of the offense, as limited by the proviso; that is to say, the Government must go further, and show that the deficiencies in question transcended the tolerances granted under the rule. If, by reason of the amorphous character of the rule, this task is extraordinarily difficult, the answer must be that the defendant is not responsible for the language of the statute or the rule. It should have been a comparatively simple thing to have established tolerances in terms of *percentages* of weight, or of cubic measure; and then no undue difficulty would have been experienced by the Government in proving that the shortages exceeded the tolerances.

The motion to strike is denied; and the motion for a directed verdict is granted.