## UNITED STATES *v.* SHREVEPORT GRAIN & ELEVATOR CO.

No. 19. Argued October 19, 1932.—Decided November 7, 1932.

78

*Solicitor General Thacher,* with whom *Assistant Attorney General St. Lewis,* and *Messrs. Erwin N. Griswold* and *W. Clifton Stone* were on the brief, for the United States.

*Mr. Yandell Boatner,* with whom *Mr. Judson M. Grimmet* was on the brief, for appellee.

80

Mr. Justice Sutherland delivered the opinion of the Court.

The defendant (appellee) was charged by indictment, returned in the court below, with misbranding certain sacks, containing corn meal, an article of food, by labeling each of the sacks as containing a greater quantity by weight than in fact was contained therein, contrary to the provisions of the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768, U. S. C., Title 21, § 2, which make it unlawful to ship in interstate or foreign commerce any article of food or drugs which is adulterated or misbranded, within the meaning of the act. The penalty prescribed is a fine of $200 for the first offense, and for each subsequent offense, not exceeding $300, or imprisonment not exceeding one year, or both, in the discretion of the court. Section 8, as amended by the act

of March 3, 1913, c. 117, 37 Stat. 732, provides that an article of food shall be deemed to be misbranded—

"Third. If in package form, the quantity of the contents be not plainly and conspicuously marked on the outside of the package in terms of weight, measure, or numerical count: *Provided, however,* That reasonable variations shall be permitted, and tolerances and also exemptions as to small packages shall be established by rules and regulations made in accordance with the provisions of Section three of this Act."

A motion to quash the indictment was interposed by the defendant upon the grounds that the act of Congress relied on is unconstitutional, because (1) the offense is not defined with certainty and therefore the act violates the due process clause of the Fifth Amendment, and the requirement of the Sixth Amendment that the accused shall enjoy the right " to be informed of the nature and cause of the accusation "; and (2) it is in conflict with Articles I, II, and III of the federal Constitution which separate the government into legislative, executive and judicial branches.

The court below sustained the motion and dismissed the proceedings. The case comes here by appeal under the provisions of § 238 of the Judicial Code, as amended by the Act of February 13, 1925. U. S. C., Title 28, § 345; U. S. C., Title 18, § 682.

*First.* The contention seems to be that the proviso makes it necessary to read § 8 as substantively prohibiting unreasonable variations in the weight, measure or numerical count of the quantity and contents of any package from that marked on the outside of the package; and that the test thereby indicated is so indefinite and uncertain that it fails to fix any ascertainable standard of guilt, or afford a valid definition of a crime. In support of the contention *United States* v. *Cohen Grocery Co.,* 255 U. S.

81, *United States* v. *Brewer,* 139 U. S. 278, *Connally* v. *General Construction Co.,* 269 U. S. 385, and other decisions of this Court are relied upon.

We are of opinion that the construction thus sought to be put upon the act cannot be sustained; and, therefore, other considerations aside, the cases cited do not apply. The substantive requirement is that the quantity of the contents shall be plainly and conspicuously marked in terms of weight, etc. We construe the proviso simply as giving administrative authority to the Secretaries of the Treasury, Agriculture, Commerce and Labor to make rules and regulations permitting reasonable variations from the hard and fast rule of the act and establishing tolerances and exemptions as to small packages, in accordance with § 3 thereof.* This construction avoids the doubt which otherwise might arise as to the constitutional point, and, therefore, is to be adopted if reasonably possible. *United States* v. *Standard Brewery,* 251 U. S. 210, 220; *United States* v. *La Franca,* 282 U. S. 568, 574. We find nothing in the terms of the act to require a division of the proviso so that the power of regulation will apply to the establishment of tolerances and exemptions, but not to reasonable variations. We think both are included. As to this there would be no room for doubt if it were not for the presence of a comma after the word " permitted," or the absence of one after the word " established." Inserting the latter, the proviso would read, " That reasonable variations shall be permitted, and tolerances and also exemptions as to small packages shall be established, by rules and regulations . . ." Punctuation marks are no part of an act. To determine the intent of the law, the court, in construing a statute, will disregard the punctua-

---

* Sec. 3 provides that the Secretaries named " shall make uniform rules and regulations for carrying out the provisions of this act. . . ."

tion, or will repunctuate, if that be necessary, in order to arrive at the natural meaning of the words employed. *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77, 84–85; *United States* v. *Lacher*, 134 U. S. 624, 628; *United States* v. *Oregon & California R. Co.*, 164 U. S. 526, 541; *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 480; *Chicago, M. & St. P. Ry. Co.* v. *Voelker*, 129 Fed. 522, 526–527.

Our attention is called to the fact that the House Committee on Interstate and Foreign Commerce, in reporting the bill which afterwards became the act in question (H. R. 850, 62d Cong., 2d Sess., pp. 2–4), agreed with the view that the authority to make rules and regulations was confined to the establishment of tolerances and exemptions; and that the Senate Committee on Manufactures (S. R. 1216, 62d Cong., 3d Sess., pp. 2–4) reported to the same effect. In proper cases, such reports are given consideration in determining the meaning of a statute, but only where that meaning is doubtful. They cannot be resorted to for the purpose of construing a statute contrary to the natural import of its terms. *Wisconsin R. R. Commn.* v. *C., B. & Q. R. Co.*, 257 U. S. 563, 588–589; *Penna. R. Co.* v. *International Coal Co.*, 230 U. S. 184, 199; *Van Camp & Sons* v. *American Can Co.*, 278 U. S. 245, 253. Like other extrinsic aids to construction their use is "to *solve*, but not to *create* an ambiguity." *Hamilton* v. *Rathbone*, 175 U. S. 414, 421. Or, as stated in *United States* v. *Hartwell*, 6 Wall. 385, 396, " If the language be clear it is conclusive. There can be no construction where there is nothing to construe." The same rule is recognized by the English courts. In *King* v. *Commissioners*, 5 A. & E. 804, 816, Lord Denman, applying the rule, said that the court was constrained to give the words of a private act then under consideration an effect which probably was "never contemplated by those who

obtained the act, and very probably not intended by the legislature which enacted it. But our duty is to look to the language employed, and construe it in its natural and obvious sense." See also *United States* v. *Lexington Mill Co.,* 232 U. S. 399, 409; *Caminetti* v. *United States,* 242 U. S. 470, 485.

Moreover, the practical and long continued construction of the executive departments charged with the administration of the act and with the duty of making the rules and regulations therein provided for, has been in accordance with the view we have expressed as to the meaning of the section under consideration. The rules and regulations, as amended on May 11, 1914, deal with the entire subject in detail under the recital, "(i) The following tolerances *and variations* [italics supplied] from the quantity of the contents marked on the package shall be allowed: . . ." Then follows an enumeration of discrepancies due to errors in weighing which occur in packing conducted in compliance with good commercial practice; due to differences in capacity of bottles and similar containers, resulting from unavoidable difficulties in manufacture, etc.; or in weight due to atmospheric differences in various places, etc. These regulations, which cover variations as well as tolerances and exemptions, have been in force for a period of more than eighteen years, with the silent acquiescence of Congress. If the meaning of the statutory words was doubtful, so as to call for a resort to extrinsic aid in an effort to reach a proper construction of them, we should hesitate to accept the committee reports in preference to this contemporaneous and long continued practical construction of the act on the part of those charged with its administration. Such a construction, in cases of doubtful meaning, is accepted unless there are cogent and persuasive reasons for rejecting it. See, for example, *United States* v. *Johnston,* 124 U. S. 236, 253.

. *Second.* The contention that the act contravenes the provisions of the Constitution with respect to the separation of the governmental powers is without merit. That the legislative power of Congress cannot be delegated is, of course, clear. But Congress may declare its will, and after fixing a primary standard, devolve upon administrative officers the " power to fill up the details " by prescribing administrative rules and regulations. That the authority conferred by the act now under review in this respect does not transcend the power of Congress is not open to reasonable dispute. The effect of the provision assailed is to define an offense, but with directions to those · charged with the administration of the act to make supplementary rules and regulations allowing reasonable variations, tolerances and exemptions, which, because of their variety and need of detailed statement, it was impracticable for Congress to prescribe. The effect of the proviso is evident and legitimate, namely, to prevent the embarrassment and hardship which might result from a too literal and minute enforcement of the act, without at the same time offending against its purposes. The proviso does not delegate legislative power but confers administrative functions entirely valid within principles established by numerous decisions of this court, of which the following may be cited as examples. *Buttfield* v. *Stranahan,* 192 U. S. 470, 496; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 542; *United States* v. *Grimaud,* 220 U. S. 506, and authorities reviewed.

*Judgment reversed.*

MR. JUSTICE BRANDEIS, MR. JUSTICE STONE and MR. JUSTICE CARDOZO concur in the result on the ground that the statute, as punctuated, reads as its legislative history shows Congress intended it to read, and that, so read, it is sufficiently definite to satisfy constitutional requirements.