**Charles R. HARD, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent.**

**No. 11989.**

United States Court of Appeals
Seventh Circuit.

Oct. 8, 1957.

George F. Archer, Chicago, Ill., for petitioner.

Franklin M. Stone, Gen. Counsel, Ulrich V. Hoffmann, Atty., Washington, D. C., Daniel M. Friedman, Robert L. Park, and O. D. Ozment, Assts. Gen. Counsel, Washington, D. C., Robert A. Bicks, Acting Asst. Atty. Gen., for Civil Aeronautics Board.

Before FINNEGAN and SCHNACKENBERG, Circuit Judges, and PLATT, District Judge.

FINNEGAN, Circuit Judge.

A protocol statement, part of the Congressional declaration of policy in § 2 of the Civil Aeronautics Act of 1938 [1]

1. 52 Stat. 973, 980, 49 U.S.C.A. § 402.

is the main prop for Board [2] action under § 609 of the Act, 49 U.S.C.A. § 559:

> "Sec. 2. In the exercise and performance of its powers and duties under this Act, the Authority [Civil Aeronautics Authority, now CAB] shall consider the following, among other things, *as being in the public interest* * * *
>
> "(b) The regulation of air transportation in such manner as to recognize and preserve the inherent advantages of, assure the highest degree of safety in [air] transportation * * * (italics supplied)"

Section 609, in relevant part provides that: "The Authority * * * from time to time * * * may reexamine any airman, and, after investigation, and upon notice and hearing, may alter, amend, modify, or *suspend,* in whole or in part, any type certificate * * * airman certificate * * * *if the interest of the public so requires,* or may revoke, in whole or in part, any such certificate for any cause which, at the time of revocation, would justify the Authority in refusing to issue to the holder of such certificate a like certificate. In cases of *emergency, any such certificate may be suspended,* in whole or in part, for a period not in excess of thirty days, without regard to any requirement as to notice and hearing. The Authority shall immediately give notice of such suspension to the holder of such certificate and shall enter upon a hearing which shall be disposed of as speedily as possible. During the pendency of the proceeding the Authority may further suspend such certificate, in whole or in part, for an additional period not in excess of thirty days." [3]

Challenging a final order of CAB suspending his airline transport pilot rating for six months (with a credit for sixty days) Hard invoked our jurisdiction under § 1006 of the Act [4] coupled with § 1009 of the Administrative Procedures Act,[5] seeking reversal of that decision because it is grounded on the Board's conclusion that: " * * * the accident itself, together with a substantial suspension of * * * [Hard's] airline transport rating, *would provide a sufficient deterrent against* * * * [Hard] *or other pilots taking similar risks with their passengers' lives."* Without disputing the facts concerning his accident, Hard attacks the Board's jurisdiction to impose on him what he categorizes as a "penalty"; while buttressing his contention with the argument that it was error for the Board to try a case under § 609 on a theory that he lacks qualifications for an airline transport pilot rating, and then impose deterrent sanction despite finding him qualified. And in reliance on § 903(b) (1), 49 U.S.C.A. § 623(b) (1), Hard, the petitioner, asserts he is entitled to a trial by jury on issues involving civil penalties.

By his various points urged in this review, Hard would constrict the Board's power, to suspend his airline transport rating, to only the case where it found him unqualified or lacking ability to fly aircraft. The Board, on the other hand, reading and synthesizing § 2 and § 609 envisages a broad grant of power encompassing deterrent action when "the interest of the public" safety "so requires." In other words this administrative agency charged with "assuring the highest degree of safety" in air transportation contends that § 609 supplies authority for making an example of Hard in order to deter him and other airline pilots from jeopardizing the safety of travelers by air. "Penalty," as a symbol repeatedly used by this petitioner is singularly ineffective for gauging the scope of power granted the Board by Congress. Power and jurisdiction flow from the total piece of legislation, under examination, for

2. Civil Aeronautics Board, See 54 Stat. 1235 for the transfer of Civil Aeronautics Authority; 1940 Reorg. Plan No. IV, § 7, effective June 30, 1940, 5 F.R. 2421, 5 U.S.C.A. § 133t note.

3. 52 Stat. 1011; Emphasis supplied.

4. 52 Stat. 1024, as amended, 49 U.S.C.A. § 646(a).

5. 60 Stat. 237, 5 U.S.C.A. § 1001 et seq.

that reason the answer eludes capture with the single word "pena'ty." Legislative history and experience under the Act combine in firmly suggesting an interpretation at odds with the limited view put forward by this petitioner. At any rate the conclusion petitioner suggests—that the Board mandated a "penalty" is unpersuasive rather than a logically compelling linguistic technique. We think the Board's order is consonant with the Congressional grant of power and consistent with achieving the statutory aim spelled out as the "highest degree of safety." Whether the Board's order has salutary effect is beside the mark for all the agency can do is strive for protection of the public traveling by aircraft. But the problem engendered by this appeal is, of course, not solved in isolation. For, as we show below, Hard participated in a serious episode appraised by the examiner as "marginal" with regard to fault and responsibility. What Hard contends for would drive the Board into an area of sharp black and white, leaving the gray zone unprotected when, in the exercise of its discretion, a qualified airline pilot's behavior merits suspension rather than revocation of rating.

After a non-fatal accident on February 17, 1956, at Owensboro, Kentucky, involving an Eastern Air Lines aircraft Hard was piloting, his airline transport pilot rating (ATR) was suspended, on an emergency basis, for sixty days. During that suspension period the Administrator of Aeronautics filed a complaint with the Civil Aeronautics Board seeking suspension or revocation of the ATR held by this petitioner. An examiner for CAB found that the 60 day suspension was in the public interest but that there was no violation of Civil Aeronautics Regulations. CAB, on review, ordered petitioner's airline transport pilot rating suspended for six months. The impact of the Board's order, stayed during this court's review, precludes petitioner from serving as an airline captain during the suspension period established by the Board, though he may act as a co-pilot

by virtue of other unrevoked licenses currently held by him.

Lying behind the Board's ultimate action in ordering Hard's suspension for four months (crediting him with two months period under their emergency order) is this pilot's approach to the Owensboro Airport for landing under instrument conditions due to rain in the area. After breaking through the overcast north of the field, petitioner determined to land on Runway 5 which runs to the northeast, a course of action which required that the aircraft be maneuvered to a point southwest of the field so that the aircraft could be landed in a northeasterly direction. Hard, piloting the aircraft during this approach, proceeded southwest to a point found by the Board to be approximately one-half mile to the left of the southwest end of Runway 5. He then began a descending and banking U turn to the left to enter the runway. The left bank steepened sharply on the approach; power was applied and the aircraft rolled to the right; and the right wing struck the ground at a point 330 feet short of the runway and 125 feet to its right. The aircraft was demolished, but none of the twenty-three persons on board sustained any serious injury. At the proceedings it was the Administrator's contention, and the Board so found in effect, that Hard had not allowed sufficient lateral suspension between the end of the runway and the point at which the turn began to permit a normal turn into the runway; that he persisted in attempting to land when it became apparent that a landing could be accomplished only through acrobatic maneuvers. There was no finding by the Board that Hard lacked flying ability.

Relying on § 609, the Administrator filed a complaint with CAB, on March 16, 1956, requesting revocation or suspension of petitioner's certificate based on alleged lack of qualification. CAB, through its Bureau of Safety Investigation (Reorg.Plan. No. IV, § 7, 52 Stat. 1012, 1940 49 U.S.C.A. §§ 581, 582), held public hearings on March 22, 1956 and took testimony of witnesses, including

this petitioner. Petitioner responded to the Administrator's complaint with an answer and motion to dismiss; the hearing examiner overruled the motion. Subsequently a trial on the merits was held by the Board's examiner and he found, in substance, that though the emergency suspension was in the public interest there had been no violation of any rule, regulation or statute—or, succinctly put: Hard had not been shown to be unqualified to fly and that disciplinary action was uncalled for in the circumstances. The examiner's decision was appealed, June 1, 1956, by the Administrator to the Board. After the examiner's decision, but before the Board's final suspension order, its accident investigation report was issued, containing *inter alia* this statement: "The Board is of the opinion that these factors [outlined in the report] indicate poor planning and execution of the approach by Captain Hard." Several months later, the Board wrote its decision and stated among other aspects:

"We agree with the Administrator that disciplinary action is called for in this case, and that the Board could not, by failure to impose a sanction, tacitly condone a course of action, which, even if no accident had resulted, would have brought an aircraft to within inches of disaster. On the other hand, we question whether respondent's conduct on this flight was so egregious as to require revocation in the public interest, when we consider his eleven year record as a captain for Eastern and over 8,000 hours of flying experience without a previous incident of this type, or any disciplinary action for violations of safety rules. This does not mean that a single violation by an experienced pilot cannot ever call for revocation of his rating, for in flagrant cases the Board has ordered revocation. But on the facts here involved, we believe that the carelessness shown is not so egregious as to point to the ul-

timate sanction of revocation. In our judgment, the accident itself, together with a substantial suspension of his airline transport rating, would provide a sufficient deterrent against respondent or other pilots taking similar risks with their passengers' lives.

"Accordingly, we find a six month suspension should be imposed upon respondent, * * *"

From its factual premises, that administrative logic is understandable and, again we comment on the absence of a contest over the fact findings concerning the accident. To be sure the suspension of Hard, a qualified airman, at first appears as an arbitrary or unauthorized action but we think there is ample statutory foundation supporting the power asserted by the Board. Nothing we have found in the Act manifests a legislative purpose to hobble this agency in its exercise of discretion. Policy formulation is a legislative function.

Wilson v. Civil Aeronautics Board, D.C.Cir., 1957, 244 F.2d 773, 774,[6] currently pending on petition for certiorari is closely analogous to Hard's case and apparently the District of Columbia Court of Appeals was impressed by the Board's history that: "From the effective date of the Act of 1938 through June 30, 1956, the Board has suspended approximately 4000 airmen for violation of rules, without findings that they lacked competence or qualifications and without requiring re-examination before reinstatement." By a marginal note in its brief filed in our court the Board has supplied us with similar information. While, of course, a persistent course of error could not override judicial judgment, courts do and have consistently placed authoritative weight on interpretative rules and practices consistently followed over long periods by administrative agencies. United States v. Shreveport Grain & Elevator Co., 1932, 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175; Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 53

**6.** Supreme Court Doc. No. 434, 78 S.Ct. 119.

S.Ct. 350, 77 L.Ed. 796. Without relying on the Wilson case we would leave the order brought before us for scrutiny undisturbed because in our opinion the Board acted within permissible limits of administrative interpretation circumscribed by the power and authority granted in §§ 2 and 609.

We find nothing in the record showing any steps taken by petitioner for deferment of the accident report at the Board level, despite his obvious awareness of the investigation. Federal Trade Commission v. Cement Institute, 1948, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010, adequately offsets petitioner's claim of pre-judgment by the Board. See Davis, Administrative Law, Chapter 9 (1951). Indeed, the absence of revocation manifests treatment of pilot Hard inconsistent with that argument his counsel now presses on us.

We affirm the Board's order presented for review by the petition filed in our court.

Order affirmed.