61 N.J. Super. 403 (1960)
160 A.2d 677
STATE OF NEW JERSEY, PLAINTIFF,
v.
S. & W. WALDMAN, INC., DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided May 3, 1960.
*404 Mr. Alfred P. D'Auria, Deputy Attorney General, argued the cause for the plaintiff (Mr. David D. Furman, Attorney General, attorney).
Mr. Samuel L. Cohen argued the cause for the defendant (Messrs. Cohen & Weinberg, attorneys).
WAUGH, A.J.S.C.
This is a trial de novo in the Essex County Court upon appeal from a judgment of conviction in the Municipal Court of the City of Newark for a violation of R.S. 51:1-29 in that the defendant "did expose for sale and did sell 15 packages of butter which were represented to be one pound net, which packages did in fact weigh less than one pound net."
This matter having been tried by the Court without a jury, the following facts were elicited: On September 30, 1959, Michael Giuliano and Charles Riccardi of the Division of Weights and Measures made an inspection of the butter in question at the retailer's premises and found each package to be short of the stated net weight by one-half to three-eighths of an ounce. The court notes parenthetically that the retailer was originally a party defendant but apparently with the State's consent the complaint against the retailer was dismissed. If this was done on the theory that the wholesaler ought to take the fall so to speak, it was improper. Retailers properly found guilty of short weight will soon buy only from wholesalers who pack properly to allow for normal shrinkage. The butter in question had been *405 packaged by the defendant and supplied to the retail store by a distributor. A coded marking on the wrappers indicated that a minimum of 23 days had elapsed from the date the butter therein contained had been packed until it was inspected on September 30. Further testimony indicated that butter has a tendency to shrink due to its high water content, and that a variance in temperature will induce shrinkage.
R.S. 51:1-29 provides:
"No person shall distribute or sell, or have in his possession with intent to distribute or sell, any article of food in package form, unless the net quantity of the contents be plainly and conspicuously marked on the outside of the package in terms of weight, measure or numerical count.
Reasonable variations, tolerances and exemptions as to small packages shall be permitted. The state superintendent shall by order fix such tolerances and exemptions as to small packages as shall have been or may hereafter be fixed by the secretary of the treasury, the secretary of agriculture and the secretary of commerce of the United States of America.
Such tolerances and exemptions shall be published at the end of the session laws of the legislature next thereafter published after the making of said order and shall take effect when so published.
If any such tolerance or exemption, so adopted, shall be changed by the three secretaries above named, it shall not continue in effect in this state after such change has become effective. Any such order may be prima facie proven in any court by the mere production of the volume of such laws containing the publication thereof.
Any person violating any of the provisions of this section shall for the first offense be liable to a penalty of not less than twenty-five nor more than fifty dollars, and for a second offense to a penalty of not less than fifty nor more than one hundred dollars, and for each subsequent offense to a penalty of not less than one hundred nor more than two hundred dollars."
The only reported opinion construing this statute is State v. Hotel Bar Foods, 18 N.J. 115 (1955), most of which it is noted is by way of dictum, since the convictions there under review were for violations of R.S. 51:1-96. In that opinion the court stated at page 123:
"The Superintendent never adopted any regulations pursuant to the statutory direction that reasonable variations be permitted although *406 there has been no obstacle to their promulgation at any time." (Emphasis added)
Furthermore, the court concluded at page 129:
"We are convinced that the legislation now in effect requires that the superintendent first prescribe reasonable variations and thereafter enforce the marking provisions applicable to packaged food under R.S. 51:1-29."
This despite a finding by the court at page 123 that "our statute deliberately omits any requirement that the federal regulation as to variations be adopted although it does contain a mandatory direction that the state superintendent fix `such tolerances and exemptions as to small packages as shall or may hereafter be fixed by the secretary of the treasury, the secretary of agriculture and the secretary of commerce of the United States of America.'" The "direction" is probably found in the provision that "reasonable variations, tolerances and exemptions as to small packages shall be permitted." Such a conclusion obviates the constitutional question raised in United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932), wherein the United States Supreme Court held the Federal Food and Drug Act constitutional, thereby reversing the finding of a U.S. District Court that the statute violated the Sixth Amendment because "the dealer could never know whether he was violating the law or not until he was brought into court." United States v. Shreveport Grain & Elevator Co., 46 F.2d 354, 355 (D.C.D. La. 1930), reversed 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932). On appeal, the United States Supreme Court construed the statute in the following manner:
"The substantive requirement is that the quantity of the contents shall be plainly and conspicuously marked in terms of weight, etc. We construe the proviso simply as giving administrative authority to the Secretaries of the Treasury, Agriculture, Commerce and Labor to make rules and regulations permitting reasonable variations from the hard and fast rule of the act and establishing tolerances and *407 exemptions as to small packages, in accordance with section 3 thereof. This construction avoids the doubt which otherwise might arise as to the constitutional point and therefore is to be adopted if reasonably possible." 287 U.S., at page 82, 53 S.Ct., at page 43.
Subsequent to, and in accordance with the Hotel Bar Foods opinion, the State Superintendent of Weights and Measures promulgated regulations as to the "reasonable variations" permitted under R.S. 51:1-29. Specifically, Regulation No. 50, section K(1), provides that:
"(1) variations from the stated weight or measure shall be permitted when caused by ordinary and customary exposure, after the food is sold or delivered by the manufacturer, packer, or distributor, to conditions which normally occur in good distribution practice and which unavoidably result in change of weight or measure * * *."
Section (1) provides that the extent of variation permissible under (k)
"of this regulation in the case of each lot, aggregation, shipment, delivery, or of prepackaged food commodities in any merchandizing establishment where such commodities are sold or offered for sale, shall be determined by the facts in such case."
Many interesting questions are raised as to the meaning, effect and validity of Regulation 50, none of which need be resolved in deciding the matter sub judice. Suffice it to say that the court will discuss some of these problems infra, after satisfying counsel's anxiety as to the result in this case.
I find that the State has failed to prove any violation of R.S. 51:1-29 on the part of this defendant. The State produced evidence that the defendant sold the butter in question and that at some time not less than 23 days subsequent to that sale said butter weighed less than the net quantity indicated on the wrapper. Were butter of a more stable nature it might be logically argued that the only inference to be drawn from these facts is that the butter weighed less than the stated net quantity at the time it was sold. However, any such inference is rebutted by the *408 highly credible evidence before the court that the packages weighed one pound net when processed and that butter, due to its high water content, has a tendency to shrink. This being so, the court concludes that the State has not sustained the burden of proving that the defendant did "distribute or sell, or have in his possession with intent to distribute or sell, any article of food in package form" in violation of the statutory requirement that "the net quantity of the contents be plainly and conspicuously marked on the outside of the package in terms of weight."
In other words, the court concludes that the weight shortage must be shown to have existed during the possession or at the time of sale or distribution rather than at some subsequent point in time.
Such a conclusion is in keeping with the tenor of a statute which makes criminal the act of possession or sale without any knowledge or guilty intent. Any extension of criminal responsibility under the statute and regulations to the point where the misbranded article is no longer within the control of the accused (i.e., where the variation from the stated weight occurs subsequent to the sale or distribution) appears to be unwarranted and would lead in many cases to harsh if not absurd results.
While as a matter of public policy it might be desirable to penalize a packer such as the defendant here for knowingly selling packages of a substance which, due to its composition, will shrink below the stated net quantity by the time it reaches the consumer in the ordinary course of commerce, I cannot so construe this act. That policy is for the Legislature.
Under such a construction of the statute, and in light of the existing regulations which make legal only those variations (1) "caused by ordinary and customary exposure * * * to conditions which normally occur in good distribution practice and which unavoidably result in change of weight or measure" or (2) "caused by unavoidable deviations in weighing or measuring * * * which occur in good *409 packing practice," situations might well arise where a packer would be criminally responsible for the negligence of a distributor or retailer who did not use good distribution practice, which resulted in a weight shortage not encompassed by Regulation 50.
The court reaches this conclusion without the necessity of coming to grips with the problem of what variations are reasonable. A number of questions necessarily remain unanswered:
First, assuming the validity of Regulation 50, upon whom does the burden of proving the reasonableness of the variation fall? Compare State v. Rabatin, 25 N.J. Super. 24 (App. Div. 1953) with United States v. Kraft Phenix Cheese Corporation, 18 F. Supp. 60 (D.C.S.D.N.Y. 1936) where the court held that under the Federal Food and Drug Act the government had to show that the deficiency exceeded the permissible variation.
Second, is this a valid regulation? Aside from the procedural question as to whether the regulation becomes effective either at the time of publication of the regulation as required by the statute of tolerances and exemptions, namely at the end of the session laws, or after filing with the Secretary of State as provided in Article V, Sec. 4, par. 6 of the New Jersey Constitution of 1947 when considered in light of Article XI, Sec. 1, par. 3 of that Constitution, the court directs its attention to the specific provisions of Regulation 50. Much of that regulation is based upon the federal regulations. This is true not only in the case of tolerances and exemptions, but also as to variations. We may, therefore, look to the federal regulation as a guide to the meaning of Regulation 50, always, of course, keeping in mind the differences in these statutes. The federal Regulation 21 C.F.R. § 1.8(k) and Regulation 50(k) both set forth the two types of variations from stated net weight permissible, viz., those caused (1) by ordinary and customary exposure occurring in good distribution practice and (2) by unavoidable deviations in weighing or measuring the contents which *410 occur in good packing practice. Both regulations very reasonably provide that the second type variation will not be permitted "to such extent that the average of the quantities in the packages comprising a shipment * * * is below the quantity stated, and no unreasonable shortage in any package shall be permitted, even though averages in other packages * * * compensate for such shortage."
The New Jersey regulation, however, goes further and makes this provision with regard to averaging applicable to variations caused by exposure. Assuming the homogeniety of various units of any food substance, it would be expected that a variation in any given unit due to exposure would also occur in every other unit similarly exposed. Therefore, this provision is so inconsistent with and repugnant to the concept of permitting variations due to exposure as to nullify the effect of that provision and open the validity of the regulation to question.
A judgment of acquittal will be entered.