## Commonwealth v. Harshaw

*Peter E. Blystone*, for Commonwealth.

*R. Charles Thomas*, for defendant.

MOOK, P. J., June 27, 1962.—This is an appeal from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania suspending the operator's license of defendant for a period of four months. This case is somewhat unusual by reason of the fact that the suspension order was entered not by reason of any unlawful driving by defendant but rather due to an alleged violation of The Vehicle Code relating to a faulty inspection. A hearing was held before the court de novo but because of the unusual nature of the case we ordered the testimony transcribed and listed the case for argument and requested counsel for the Commonwealth and defendant to file briefs. After consideration of the evidence, we make the following:

### Findings of Fact

1. Defendant is a resident of Sadsbury Township, Conneaut Lake, R. D. 2, Crawford County, Pennsyl-

vania, and is the proprietor of a garage and service station known as Harshaw's Sterling Service and a holder of a certificate of appointment #5726 as an official inspection station of motor vehicles in the Commonwealth of Pennsylvania.

2. On January 17, 1960, defendant, William M. Harshaw, furnished to one Barbara Shaw, and placed on the vehicle of her husband, Floyd G. Shaw, Jr., a certificate of inspection and approval without having made an official inspection of its mechanism and equipment as required by section 819(f) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §819.

3. Defendant was arrested for violation of the foregoing section by Officer Roy M. Hogan, an officer of the Pennsylvania State Police, before Justice of the Peace Marion M. Ince, and defendant paid a fine of $25 and costs of prosecution imposed by the justice.

4. Said defendant, William M. Harshaw, had been previously arrested on June 17, 1959, for speeding 60 miles per hour in a 30 mile speed zone and convicted; on June 21, 1959, he was arrested for a stop sign violation and convicted; and on November 14, 1959, he was arrested for speeding at 70 miles per hour in a 50 mile zone and convicted.

5. On February 16, 1960, defendant's license was suspended for a period of three months for speeding and restored on May 16, 1960.

### Discussion

Counsel for the Commonwealth concedes that he is unable to find any previously reported decisions where the Secretary of Revenue suspended the operator's license of a defendant for violation of section 819(f). There are numerous decisions reported where the secretary has suspended certificate of appointment of the inspection station upon proof that the holder of a cer-

tificate failed to comply with the provisions of the act or that the business of the inspection station in connection with the inspection of motor vehicles had been improperly conducted: e.g. Commonwealth v. W. J. Harris and Son, 403 Pa. 598. However, it is contended in this case, on behalf of the Commonwealth, that under section 618(b) (2), the Secretary of Revenue has a right to suspend the operator's license of this defendant upon proof that he has "committed any violation of the laws of this Commonwealth relating to vehicles or tractors."

Section 819(f) provides:

"It shall be unlawful for any person to furnish, give or sell to any owner or operator of a motor vehicle, trailer or semi-trailer, or to any other person, or to place in or on any such vehicle a certificate of inspection and approval, unless an official inspection of its mechanism and equipment shall have been made, and the vehicle conforms with the provisions of this act. It shall be unlawful for any such designated official inspection station to furnish, loan, give or sell a certificate or certificates of inspection and approval to any other such designated official inspection station or any other persons, except those entitled to receive them under the provisions of this act. It shall be unlawful for any person to have in his possession any certificate of inspection and approval with knowledge that such certificate has been illegally purchased, stolen or counterfeited."

We must, therefore, consider whether the evidence will support a finding that defendant violated this section. Hence, we must briefly consider the testimony. Mr. Floyd G. Shaw, Jr., testified that on the late afternoon of January 16, 1960, he drove his 1957 Chevrolet automobile to Mr. Harshaw's place of business for the purpose of making arrangements to have the vehicle inspected. He asked Mr. Harshaw to check the car over

and see what it needed and when he could get an appointment. Mr. Harshaw pulled off the left front wheel, made an examination of the mechanism of the wheel, looked at the headlights and then told him to bring the vehicle back to the garage the next morning at ten o'clock. Mr. Shaw is positive that Mr. Harshaw did not take any of the other wheels off except the left front wheel, although he told him that he had a noise in the left rear wheel and asked him to look into it.

The next morning Mr. Shaw's wife, Barbara, took the car to defendant's garage to make the inspection. She testified that she remained in the garage the entire time it was being inspected. She observed him tighten the exhaust gaskets, check the lights, replace the bulb in the license plate light and then put the inspection certificate on the car. She testified positively that he did not remove any of the wheels, nor did he take the car out and drive it. She then drove the car back to Conneaut Lake, which was only a short distance, where she left it at Dennis' Garage in order that her husband might pick it up that evening after work. Mr. Shaw is employed at Linesville for the Pennsylvania Game Commission and after work that evening he came to Conneaut Lake with his foreman and got his car at the Dennis service station. Upon driving, he still noticed the noise in the left rear wheel that he had heard prior to the inspection. Instead of taking it back to the Harshaw garage, however, Mr. Shaw drove it down to the Dennis service station the next day and took the left rear wheel off himself and found that the brake lining was worn down bare. He then took off the right rear wheel and found that this lining was likewise badly worn although not to the extent of the left rear wheel. He removed the brake shoes from both wheels and left them at the Dennis garage and secured new ones which were installed on the car. A few days later Officer Roy M. Hogan of the Pennsylvania State Police

went to the Dennis garage, took these brake shoes into his custody and then went out to show them to Mr. Harshaw. Corporal Hogan testified that Mr. Harshaw said: "I don't see how I missed them." The brake shoes were produced in court and were admitted in evidence over violent objection of defendant's counsel. However, Mr. Shaw testified positively these were the identical brake shoes removed by him from his car on January 18, 1960, and left at the Dennis garage. Corporal Hogan testified that he secured the same shoes at the Dennis garage a few days later. Under these circumstances, we think the brake shoes were sufficiently identified and properly admissible as evidence although Mr. Dennis, the proprietor of the garage, was not called as a witness as he had moved to the state of California.

At the hearing, Officer Hogan testified concerning the rules and regulations promulgated by the Secretary of Revenue governing inspection stations relating to brake lining. When a vehicle is submitted for inspection the regulation requires that in the case of bonded lining, such as the ones involved in this case, at least 25 percent of the original thickness must exist in order for a vehicle to be passed. Anything less than 25 percent of bonded lining must be replaced. The rules also require the car to be road tested before the certificate of inspection may be furnished. Hogan testified that neither one of the brake shoes on the rear wheels complied with the regulation. As we have already mentioned, the lining on the left rear wheel was completely worn down to the bare metal and the lining on the right rear wheel was very thin and down to the bare metal in one spot. The brake shoes were offered in evidence, hence there can be no doubt about the correctness of this testimony. Both Mr. and Mrs. Shaw testified that defendant did not take the car out for a road test and defendant, in fact, admitted this.

Defendant testified that when Mr. Shaw brought the car in the garage, he removed the right rear wheel and made a visual inspection of the brake lining and while he admitted it was close, he testified that it was passable. He further testified that the next morning when Mrs. Shaw brought the car in he pulled the right front wheel and found the brake lining on the front right wheel to be 75 percent. Hence, after doing everything else necessary to comply with the inspection rules, he affixed the inspection sticker to the car. He admitted that he did not make a road test but explained that when the car was brought in it was very icy and the roads were in bad condition and he wouldn't have been able to prove anything as far as braking action was concerned anyway under those weather conditions.

Thus, so far as the testimony is concerned, there is a direct conflict between the testimony of Mr. and Mrs. Shaw and defendant on the question of whether defendant inspected the rear wheels of the car. However, we are unable to see where Mr. and Mrs. Shaw have any particular interest in this case; hence, we are inclined to accept their testimony that defendant did not examine the rear wheels. Furthermore, his excuse that he did not road test the car because of bad road conditions is hardly a valid one, because even in this climate the roads are not usually icy every day and he should not have completed the inspection until he had done the road test as required by the rules and regulations. We, therefore, find that defendant did not comply with the requirements of the Secretary of Revenue in making an official inspection of the Shaw automobile.

The learned counsel for defendant, however, contends that this does not prove a violation of the statute and that the rules and regulations laid down by the secretary are irrelevant. He contends that the statute only requires an official inspection be made and that "the vehicle conform with the provisions of this act."

With reference to brakes, he contends that it is necessary that the Commonwealth establish that the brakes failed to comply with section 816 of The Vehicle Code. This section provides:

"(a) Every vehicle and tractor using the highways of this Commonwealth, except trailers and semi-trailers having chassis and body weights of less than one thousand (1000) pounds, shall be equipped with brakes adequate to control the movement of, and to stop and to hold such vehicle or tractor. Brakes shall be capable of stopping the vehicle and its load, if any, traveling at a speed of twenty (20) miles per hour upon a dry, hard, approximately level stretch of highway, free from loose material, where the grade does not exceed one (1) percent, within the following distances; Namely, fifty-five (55) feet for emergency brakes, forty (40) feet for service brakes effective upon less than all wheels, and thirty (30) feet for service brakes effective upon all wheels. Brakes shall be maintained in good working order and so adjusted upon vehicles, other than motorcycles and bicycles with motors attached, as to operate as equally as practicable with respect to the wheels on opposite sides of the vehicles. Emergency brakes shall be adequate to hold such vehicle or vehicles stationary upon any grade upon which operated."

Officer Hogan admitted upon cross-examination that he did not road test this car to determine whether or not the brakes complied with the foregoing section. Defendant, therefore, contends that the Commonwealth has failed to prove that this vehicle did not conform with the provisions of the code. However, in our opinion, the rules and regulations established by the secretary concerning official inspection of motor vehicles are not irrelevant in this proceeding for the reason that the statute, section 819(a), specifically provides that:

"The secretary is authorized to designate, furnish instructions to, and to supervise official inspection stations for corrections, adjustments, repairs and inspection of motor vehicles, trailer and semi-trailers for the proper and safe performance of steering mechanism, brakes, lighting equipment, horns and warning devices, mirrors, windshield wipers and such other conditions to assure that such vehicles are in conformity with this act . . ."

We, therefore, believe that when section 819 (f) provides that: "It shall be unlawful for any person to furnish . . . a certificate of inspection and approval, unless an official inspection of its mechanism and equipment shall have been made . . .", the words "official inspection" clearly mean an inspection which complies with the instructions designated and furnished by the secretary as stated in section 819 (a).

It is not uncommon for the legislature to provide that a commission or other official body may establish rules and regulations and provide a penalty for noncompliance with them. Such rules and regulations are found in our game laws, fishing laws and in our liquor laws. In Commonwealth v. Koneff, 22 D. & C. 515, the court said, quoting 6 R. C. L. 181:

" 'While the legislature cannot delegate to a board, or to an executive officer the power to declare what acts shall constitute a criminal offense, it may by statute authorize such board or official to promulgate rules and regulations within definite guiding limits outlined in the act for the purpose of carrying out the legislative intent, and it may make a violation of such regulations a criminal offense punishable in a manner prescribed by existing law or by the statute.' "

Again in Commonwealth v. Philp, 13 D. & C. 2d 769, 772, the court said:

"The general principle governing the conditions under which the power to make rules and regulations may

be delegated has been stated as follows: 'A legislature, in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose': 11 Am. Jur. p. 955, §240, n. 18."

In Baldwin Township's Annexation, 305 Pa. 490, 494, the Supreme Court said:

"In Locke's App., 72 Pa. 491, Justice Agnew, with his customary clarity, said: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power; and must, therefore, be a subject of inquiry and determination outside of the halls of legislation . . .'"

In the case of United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 85, the court stated the rule as follows:

". . . That the legislative power of Congress cannot be delegated is, of course, clear. But Congress may declare its will, and after fixing a primary standard, devolve upon administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations. That the authority conferred by the act now under review in this respect does not transcend the power of Congress is not open to reasonable dispute. The effect of the provision assailed is to define an offense, but with directions to those charged with the administration of the act to make supplementary rules and regulations allowing reasonable variations, tolerances and exemptions, which, because of their variety

and need of detailed statement, it was impracticable for Congress to prescribe . . . "

These decisions are particularly appropriate to the type of rules and regulations with which we are dealing here. It would be quite impracticable for the legislature to attempt to set forth in the statute itself all of the details which must necessarily be involved in the inspection of dozens of different kinds and models of vehicles to which The Vehicle Code applies. (Actually these inspection rules and regulations consist of some 48 pages of detailed instructions relating to every type of vehicle using the highways of this Commonwealth.) To begin with, the legislature could hardly be expected to have technical knowledge sufficient to establish such regulations, and secondly, with each new modern vehicle, it might well become necessary to change the regulations at more frequent intervals than the legislature meets. Hence, the only practical way to provide for the inspection of motor vehicles is to direct that an official inspection be made and then authorize the secretary to designate and provide instructions for such inspections. Hence it follows that when the holder of an inspection certificate fails to comply with the instructions furnished by the secretary, he has failed to make an official inspection as provided by the statute.

We have concluded that Mr. Harshaw did not comply with the instructions laid down by the secretary in inspecting Mr. Shaw's vehicle, but nonetheless furnished him a certificate of inspection which was placed on his car. It therefore follows that he has violated section 819 (f) of The Vehicle Code, or as stated in section 618 (b) (2), he has committed a violation of the laws of this Commonwealth relating to vehicles and tractors. While, as we have said, the secretary could have suspended the appointment of his place of business as an official inspection station, instead he elected to suspend his operating privileges. The reason for the secretary's

decision is not material. We are only concerned with his power and whether or not it was rightfully exercised. Since we have found that defendant has violated the law, the secretary had the power to suspend his license and since it appears that this defendant has had four violations in the last two years, we cannot say his action was inappropriate.

Accordingly, we enter the following

### Order

And now, June 27, 1962, after hearing in the above-entitled case, the appeal is dismissed and the order of the Secretary of Revenue suspending the operator's privilege of the above named defendant, William M. Harshaw, is affirmed.

Costs to be paid by appellant.