# United States Court of Appeals for the Federal Circuit

---

**CAPELLA SALES & SERVICES LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendants-Appellees*

---

2016-2649, 2017-1196

---

Appeals from the United States Court of International Trade in Nos. 1:14-cv-00304-DCP, 1:15-cv-00318-DCP, Judge Donald C. Pogue.

---

Decided: January 4, 2018

---

IRENE HUEI-MIN CHEN, Chen Law Group LLC, Rockville, MD, argued for plaintiff-appellant.

AIMEE LEE, International Trade Field Office, Appellate Section, International Trade Litigation, United States Department of Justice, New York, NY, argued for defendant-appellee United States. Also represented by CHAD A. READLER, JEANNE E. DAVIDSON, REGINALD T. BLADES, JR.; JAMES HENRY AHRENS, II, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

ALAN H. PRICE, Wiley Rein, LLP, Washington, DC, for defendant-appellee Aluminum Extrusions Fair Trade Committee. Also represented by ROBERT E. DEFRANCESCO, III, LAURA EL-SABAAWI, DERICK HOLT.

————————————

Before LOURIE, O'MALLEY, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Capella Sales & Services Ltd. ("Capella") appeals from the decisions of the United States Court of International Trade (the "Trade Court"), dismissing Capella's two separate complaints under USCIT Rule 12(b)(6). *Capella Sales & Servs. Ltd. v. United States*, 180 F. Supp. 3d 1293, 1303–04 (Ct. Int'l Trade 2016) ("*Decision I*"); *Capella Sales & Servs. Ltd. v. United States*, 181 F. Supp. 3d 1255, 1263–64 (Ct. Int'l Trade 2016) ("*Decision II*"). Because the Trade Court did not err in dismissing Capella's complaints, we affirm.

## BACKGROUND

The United States Department of Commerce ("Commerce" or "the Secretary") has authority, in certain situations, to impose countervailing duties ("CVDs") on imported goods if it "determines that the government of a country . . . is providing, directly or indirectly, a countervailable subsidy with respect to" an imported good. 19 U.S.C. § 1671(a)(1) (2012). Capella challenges here the assessed CVD rate of 374.15% on four entries of aluminum extrusions that Capella imported into the United States from the People's Republic of China ("PRC"), arguing that it is entitled to a lower rate obtained by several other importers after they successfully challenged the 374.15% rate at the Trade Court in a separate case.

In determining whether and at what rates to assess CVDs, Commerce may initiate an investigation. *Id.*

§ 1671a(a). Within a fixed time period following initiation of an investigation, Commerce "shall make a final determination of whether or not a countervailable subsidy is being provided with respect to the subject merchandise." *Id.* § 1671d(a)(1). If Commerce identifies such a countervailable subsidy, then it shall determine either "an estimated individual [CVD] rate for each exporter and producer individually investigated," or, if permitted by § 1671d(c)(5), "an estimated all-others rate for all exporters and producers not individually investigated." *Id.* § 1671d(c)(1)(B)(i). If Commerce calculates an all-others rate, Commerce must then order the "posting of a cash deposit, bond, or other security . . . for each entry of the subject merchandise" at that rate. *Id.* § 1671d(c)(1)(B)(ii). This rate is referred to as the cash deposit rate.

After the posting of the cash deposit or bond at the cash deposit rate, entries are "liquidated," subject to certain limitations. *See* 19 U.S.C. § 1504. Liquidation is "the final computation or ascertainment of duties on entries." 19 C.F.R. § 159.1 (2017). The general rule is that "entries of merchandise . . . covered by a determination of the Secretary . . . shall be liquidated in accordance with the determination of the Secretary." 19 U.S.C. § 1516a(c)(1).

However, the statute contemplates several situations in which subject entries might not be liquidated at the cash deposit rate calculated in the final determination. First, if an affected party challenges a final determination by Commerce covering its entries in court, and the court enjoins liquidation of the entries at Commerce's determined rate, then those entries are instead "liquidated in accordance with the final court decision in the action," which could result in a revised cash deposit rate. *Id.* § 1516a(e). Second, subject entries not enjoined by the court must still be liquidated according to the final court decision if the entries are made "after the date of publication in the Federal Register . . . of a notice of the court

decision." *Id.* § 1516a(e)(1). Such a notice is called a "*Timken* notice," referring to *Timken Co. v. United States*, 893 F.2d 337, 341 (Fed. Cir. 1990). Commerce may also initiate administrative review of entries "if a request for such review has been received," 19 U.S.C. § 1675(a)(1), and then calculate a new rate that forms "the basis for the assessment of [CVDs] . . . and for deposits of estimated duties," *id.* § 1675(a)(2)(C).

Commerce initiated a CVD investigation of imports of certain aluminum extrusions from the PRC in 2010. As a result of the investigation, Commerce published a final determination setting the all-others rate on entries of aluminum extrusions from the PRC at 374.15%, *see* Aluminum Extrusions from the [PRC]: Final Affirmative Countervailing Duty Determination, 76 Fed. Reg. 18,521, 18,522 (Apr. 4, 2011) (the "final determination"), and issued a CVD order on May 26, 2011, directing United States Customs and Border Protection ("CBP") to assess CVDs on subject merchandise as calculated in the final determination, *see* Aluminum Extrusions from the [PRC]: Countervailing Duty Order, 76 Fed. Reg. 30,653, 30,655 (May 26, 2011). Capella imported its four entries of subject aluminum extrusions from the PRC between November 2011 and June 2012.

Meanwhile, several other aluminum importers challenged Commerce's final determination at the Trade Court, resulting in the *MacLean-Fogg* litigation. The *MacLean-Fogg* litigation resulted in court decisions holding the 374.15% all-others rate unlawful, *MacLean-Fogg Co. v. United States*, 853 F. Supp. 2d 1336, 1342–43 (Ct. Int'l Trade 2012), and affirming a lower rate determined by Commerce, *MacLean-Fogg Co. v. United States*, 885 F. Supp. 2d 1337, 1342–43 (Ct. Int'l Trade 2012). Commerce published a *Timken* notice, effective December 10, 2012, notifying the public that the latter *MacLean-Fogg* decision was "not in harmony with" Commerce's final determination. Aluminum Extrusions from the

[PRC]: Notice of Court Decision Not in Harmony With Final Determination, 77 Fed. Reg. 74,466, 74,466–67 (Dec. 14, 2012) (the "*Timken* notice"). Ultimately, the *MacLean-Fogg* litigation resulted in an all-others rate of 7.37% on entries of aluminum extrusions from the PRC. Aluminum Extrusions from the [PRC]: Amended Final Countervailing Duty Determination, 80 Fed. Reg. 69,640, 69,641 (Nov. 10, 2015).

Certain parties requested, and Commerce initiated, administrative review of 2011 and 2012 entries subject to Commerce's final determination in July 2012 and June 2013, respectively. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 77 Fed. Reg. 40,565-02, 40,567 (July 10, 2012); Initiation of Antidumping and Countervailing Duty Administrative Reviews, 78 Fed. Reg. 38,924-01, 38,925 (June 28, 2013). Capella never sought administrative review of its entries. Consequently, under 19 C.F.R. § 351.212(c) (2011), Capella's four entries were subject to automatic liquidation at the 374.15% cash deposit rate in effect at the time of the entries.

When CBP required Capella to pay cash deposits at the all-others CVD rate, Capella refused. Capella instead filed two complaints at the Trade Court challenging Commerce's instructions regarding the rate applicable to Capella's entries. Both complaints asserted that Commerce cannot lawfully apply the 374.15% rate to Capella's four entries because of the disparity between the 374.15% rate from Commerce's final determination and the ultimate 7.37% rate resulting from the *MacLean-Fogg* litigation.

The Trade Court dismissed both complaints under USCIT Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Trade Court determined that Congress, in § 1516a(c)(1) and § 1516a(e), spoke clearly on the issue of what CVD rate applies to pre-

*Timken* notice entries when liquidation is not enjoined by court decision or the subject of administrative review: the rate Commerce established in its final determination. *Decision II*, 181 F. Supp. 3d at 1263–64; *Decision I*, 180 F. Supp. 3d at 1303–04. Because there was no dispute that Capella's entries were made before the *Timken* notice and that Capella did not participate in the *MacLean-Fogg* litigation or request administrative review of its entries, Capella could not claim the benefit of the lower all-others rate awarded to the *MacLean-Fogg* litigants.

Capella appealed both dismissals, and we have jurisdiction over the consolidated appeal under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review *de novo* the Trade Court's dismissal of a complaint for failure to state a claim upon which relief can be granted. *United States v. Ford Motor Co.*, 497 F.3d 1331, 1336 (Fed. Cir. 2007). We accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of Capella. *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998).

In reviewing the validity of an agency's interpretation of a statute that it is charged with administering, "we must first carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue is judicially ascertainable." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 881 (Fed. Cir. 1998); *see also Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 & n.9 (1984). We do so by employing the traditional tools of statutory construction; we examine the statute's text, structure, and legislative history, and apply the relevant canons of interpretation. *See Timex*, 157 F.3d at 882. If we "ascertain[ ] that Congress had an intention on the precise question at issue, that intention is the law and must be given effect," *Chevron*, 467 U.S. at 843 n.9, and the only issue is whether the

agency acted in accordance with that intent, *see id.* at 842; *Timex*, 157 F.3d at 882. If, however, we conclude that Congress either had no intent on the matter, or that Congress's purpose and intent are unclear, we defer to the agency's interpretation of the statute if it falls within the range of permissible construction. *See Chevron*, 467 U.S. at 843; *LTV Steel Co. v. United States*, 174 F.3d 1359, 1363 (Fed. Cir. 1999).

Capella argues that the term "entries" in 19 U.S.C. § 1516a(c)(1) is ambiguous because it could refer to all or only some entries. Furthermore, Capella contends that Commerce's application of 19 C.F.R. § 351.212(c), which requires Commerce to apply the CVD rate in effect at the time of entry, is unreasonable in this case because of the large disparity between the 374.15% all-others rate determined by Commerce and the 7.37% all-others rate that ultimately resulted from the *MacLean-Fogg* litigation. Given the large disparity here and the purportedly punitive nature of the 374.15% rate, Capella argues that Commerce must apply the 7.37% *MacLean-Fogg* rate retroactively to Capella's entries.

The government responds that the statute is unambiguous. According to the government, the statute specifies when Commerce's determined rate does and does not apply. Even if the statute were ambiguous, the government argues that Commerce reasonably interpreted the statute in promulgating and applying 19 C.F.R. § 351.212(c), which directs Commerce to apply the rate in effect at the time of entry to Capella's entries.

We agree with the government that § 1516a(c)(1) is unambiguous and covers Capella's entries. The statute provides that, "[u]nless such liquidation is enjoined by the court," "entries . . . shall be liquidated in accordance with the determination of the Secretary" if entered "on or before the date of" the *Timken* notice. 19 U.S.C. § 1516a(c)(1). Capella correctly observes that, together,

§ 1516a(c)(1) and § 1516a(e) address three categories of entries: (1) entries made on or before the *Timken* notice, where liquidation was enjoined by court decision; (2) entries made after the *Timken* notice; and (3) entries made on or before the *Timken* notice, where liquidation was not enjoined by court decision. Entries in the first two categories "shall be liquidated in accordance with the final court decision." *Id.* § 1516a(e). The third category of entries "shall be liquidated in accordance with the determination of the Secretary." *Id.* § 1516a(c)(1). There is no dispute that Capella's entries fall in the third category: they were not enjoined by the Trade Court in an action brought under § 1516a, and they were entered before the effective date of the *Timken* notice published in December 2012.

Capella's sole textual argument is that the term "entries" in § 1516a(c)(1) is ambiguous because it is not modified by the word "all." In effect, Capella asks us to hold that entries in the third category only occasionally "shall be liquidated in accordance with the determination of the Secretary." *Id.* Capella cites no case holding that absence of the word "all" demands such a porous reading of the statute. We decline to further subcategorize § 1516a(c)(1) based on the particular facts of this case. Consequently, consistent with the statutory scheme, we conclude that Capella's pre-*Timken* notice entries not enjoined by court order under § 1516a(c)(2) may properly be "liquidated as entered" in accordance with the Secretary's final determination. *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1307–08 (Fed. Cir. 2004); *see also* 19 C.F.R. § 351.212(c).

Aside from its textual argument, Capella also contends that the term "entries" is ambiguous because of the legislative history and purpose of the statute. Capella points to a portion of the Senate Report indicating that the rate in effect at the time of entry would only apply in the "usual" case where litigation is proceeding against a

final determination. S. Rep. No. 96-249, at 248 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 634. Capella also refers to background history supposedly indicating that Congress did not contemplate "punitive" rates as high as 374.15% when it enacted § 1516a(c) in 1979, because Commerce only began to assess such rates more recently. Appellant's Br. 40–41. Rather, Capella argues that Congress only intended CVD rates to serve "remedial" purposes. *Id.* at 38.

We disfavor such use of legislative history and other extrinsic factors to create, rather than solve, an ambiguity in otherwise clear statutory text. *See Chamber of Commerce v. Whiting*, 563 U.S. 582, 599 (2011) (citing *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 83 (1932)). Congress knew how to except entries from the cash deposit rate calculated in Commerce's final determination, and did so for entries enjoined by a court decision, 19 U.S.C. § 1516a(e), and entries following a *Timken* notice, *id.* § 1516a(c)(1). Congress also provided for administrative review of entries if such review is requested. *See id.* § 1675(a)(1). In contrast, Congress did not engage in the line-drawing exercise that would be demanded by Capella's "excessive disparity" approach, *i.e.*, setting some threshold difference between the cash deposit rate and the rate eventually determined by a possible future court decision above which Commerce must apply the latter rate retroactively even to pre-*Timken* notice entries. As Congress "knew how to create exceptions" to assessing CVDs according to Commerce's final determination, and "explicitly did so" when it wished to, we decline to create further non-statutory exceptions based on the extrinsic factors cited by Capella. *See Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002). That is not a proper role for an appellate court.

In any event, the legislative history is consistent with the plain meaning of the statute, and does not require this court to create a non-statutory exception to

§ 1516a(c)(1). The Senate Report cited by Capella states that, "[p]ursuant to subsections (c)(1) and (e), in the *usual* case, liquidation would proceed in accordance with the decision under challenge while the litigation is proceeding." S. Rep. No. 96-249, at 248 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 634 (emphasis added). The Senate Report juxtaposes the "usual" case with "*extraordinary* circumstances," such as where the "[Trade Court], pursuant to [§ 1516a(c)(2)], could order the suspension of liquidation while the litigation proceeds." *Id.* (emphasis added). Capella reads too much into the term "usual." The Senate Report merely adds descriptive terms of "usual" to the situations in § 1516a(c)(1), (e) and "extraordinary" to the situation described in § 1516a(c)(2). It provides no basis for us to go beyond the text of the statute.

Thus, an ordinary reading of the statute indicates that only in certain specified cases may Commerce apply a rate different from its final determination rate. Interpreting the statute consistently with the legislative history does not permit, much less require, us to devise a nonstatutory exception to § 1516a(c)(1).

Finally, even assuming that § 1516a(c)(1) were ambiguous, we agree with the government that, under *Chevron*, Commerce reasonably interpreted the statute in 19 C.F.R. § 351.212(c). *Chevron* requires us to defer to the agency's interpretation of the statute if it falls within the range of permissible construction. *See Chevron*, 467 U.S. at 843; *LTV Steel*, 174 F.3d at 1363. Section 351.212(c)(1)(i) directs Commerce to "instruct the Customs Service to . . . [a]ssess antidumping duties or [CVDs] . . . at rates equal to the [cash deposit rate] required on that merchandise at the time of entry" if "the Secretary does not receive a timely request for an administrative review." Commerce sensibly assesses CVDs on nonreviewed entries in accordance with the final determination in effect at the time of entry. *See Shinyei*, 355 F.3d

at 1307; *see also Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1577 (Fed. Cir. 1990) ("We do not question the authority of [Commerce], pursuant to its regulation, to liquidate entries . . . at the rate set in the original antidumping duty order when there has been no challenge to the validity of that order and no request for annual review."). This is consistent with the limited time CBP has to liquidate entries, *see* 19 U.S.C. § 1504(d), provides certainty to both Commerce and affected parties of the applicable rate for non-reviewed entries, and encourages affected parties to exercise the statutory avenues for challenging Commerce's determined rate. Thus, even assuming that § 1516a(c)(1) were ambiguous, we would hold that Commerce reasonably interpreted this section under *Chevron* in light of these considerations.

In sum, we agree with the Trade Court that Capella has not alleged sufficient facts to state a claim on which relief can be granted.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Trade Court dismissing Capella's complaints.

**AFFIRMED**